Our next case for argument is 22-1817 Toyo Tire v. Atturo Tire Corporation. Mr. Lowry, please proceed when you're ready. Thank you, Your Honor. May it please the Court, Matt Lowry for Raquel and Toyo. I guess I'll start with the trade-issues, and there's a lot of words in the briefing, but the ones that really matter are the interrogatory answers when we're talking about the sanction and whether the blue highlighting of a two-dimensional surface disclosed a two-dimensional surface trade dress. And it was that, the conclusion that it didn't disclose the surface, was the reason Toyo was sanctioned that led to the exclusion of the experts in judgment against Toyo at summary judgment on his trade dress claims. Now, that language came into being when the Court said, your answer here describes the two-dimensional shape of the blocks, and it says it may include, the trade dress may include. And if you change that to get rid of may include, it's not open-ended anymore. And so Toyo changed it, added the blue highlighting, and said has and has. Are you telling me the Court actually told you if you get rid of may include, that would solve the problem? Where did they do that? I don't remember that. I don't remember that. If we could get that, but yes, absolutely. I mean, I think the Court, I remember the Court asking you to more particularly explain and not leave things open-ended, but I don't remember them directing you in a specific way about how to rewrite it. Yes, I know it's quoted in the reply brief, and the Burano will just give me a moment. Appendix 17-560, the District Court, Magistrate Judge, page 8 of the reply brief. So the second full paragraph on page 8, in 2014, this is the, so there was a motion to compel the Wednesday before Thanksgiving, a hearing the Thursday after Thanksgiving, and this is what the judge said at that hearing. She said it's open-ended in that you use the words may and include. If you eliminate the qualifiers, your answer is specific. And that's exactly what Toyo did. And for three years, nobody suggested that it was open-ended. And in fact, this case, although the District Court sanctioned Toyo for having an open-ended answer, it's not in fact open-ended. Look, the trade dress includes the grooves, the depth of the blocks, the stone ejectors in the bottom. That would be an open-ended answer where you're adding something. They weren't accused of doing it. Let me ask you something. If you think the District Court gave you a clear road map with regard to your trade dress that would result in it being two-dimensional focused on the pattern on the tread, then why would the District Court later come along and It wasn't open-ended. But it's a little more subtle, Your Honor. The clear error about it not being open-ended is what we just discussed. They did exactly what the District Court said to do. And let's be clear, we're talking magistrate judge versus Article III judges, all as the District Court judge. It was the magistrate judge, Cox, I believe, who said get rid of may and include. And it's the District Court Judge Lee who issued the sanctions. Did you ever say before the expert reports rolled in that you were claiming a two-dimensional pattern as your trade dress? In a number of instances. First of all, the answer No, you did. You said two-dimensional pattern. So the answer shows Just need a yes or no answer to my question. Did you ever say our trade dress is a two-dimensional pattern of this product design? The court in California I have a yes or no answer. Let me repeat the question again. The answer is yes. In this case. Show me where you said it. Now I'm getting interested. Where did you say before the expert reports rolled in that your asserted trade dress was nothing more than a two-dimensional pattern? It's in I've got your JA right here. Show it to me. It would be easier for me. We've got five volumes of it. Which volume is it? You have my full attention. If I could just have a moment, please. So the toil file material is saying that it's the same trade dress as in California. That Judge Lee said it's the same trade dress as in California. Let me repeat my question. Where did you say in this litigation the asserted trade dress here is the two-dimensional pattern? So the words two-dimensional appear only in the citations from the California case where the California court describes the blue highlighting as two-dimensional. And if you choose to re-characterize whatever your asserted trade dress is in another litigation, that's on you. But it was represented to the court. It was represented to the court by both Atturo and Toyo. But there's other evidence in this record, you know, especially thanks to your 30B6 witnesses. Yeah, Ms. Coleman. Ms. Coleman said that the Sykes and that the cutout, which is highlighted in blue, the three-dimensional, there's a three-dimensional element highlighted in blue. There is no three-dimensional element. It's the curve. The scalloped edges. It's a two-dimensional surface, Your Honor. A sphere has a two-dimensional surface. Coleman testified that the Sykes and the other thing down in below that keeps the rocks out are part of the... That was at the first... She said they're part of the trade dress, period. At the first deposition. And that was a contention. And at her second, her last deposition, counsel for Atturo defined the trade dress with that interrogatory answer that doesn't mention stone ejectors. She didn't... Stone ejectors aren't in her second deposition. She never took back her statement that the trade dress includes three-dimensional elements. No, she did. She did take it back in her second deposition. In her second deposition, they said, is this the trade dress? The description of the two-dimensional shape of the blocks and the blue highlighting. And she said, yes, that is the trade dress. And she was never asked about stone ejectors or grooves in that second 30B6 deposition, which happened... How many times did they have to ask her? I think... She said I was wrong? They didn't ask her if she was wrong. They said, assume this is the trade dress in this case. And she said, well, they said, is this the trade dress, the blue highlighting? And stone ejectors and groove depth are not highlighted. And she said, yes, it's the blue highlighting. And then they came back and said, okay, for this deposition... What's the site in the record for that? Pages 12 to 13 of the reply brief have the quotes in the sites. So the deposition begins with her confirming Toyo defines the alleged trade dress using the highlighted portions of the A and E on page 5 of the interrogatory answer. Well, the problem is the sites are highlighted. The sites are a little hard because the sites are not highlighted. They are actually the negative space in what is highlighted. So the sites are a dark part. They're not highlighted. But Coleman said the sites were included. I'm sorry? Coleman said the sites were included in the trade dress. The sites are included in the... You can identify them in that. But she also said it's just the blue highlighting. And that was a bit... Page 9288, the very page of site. Witness, there are sites that are part of the trade dress. Correct. What she was doing... What am I supposed to do with it? They said when asked... So the sites are part of the trade dress, an issue in this case. There are sites that are part of the trade dress. Correct. Right. That is the one... That's at line 1782. Correct. And that was actually in response to a question of whether it's about a part of the tire, as opposed to... Or the tread, as opposed to the trade dress. But really, these are contentions. Part of the design. And then she said, yes, the design is the trade dress. And again, the description in words is the two-dimensional outside shape of the blocks. And then the highlighting is there. Let's assume for the moment that this court concludes that the trial judge was eminently reasonable in reading everything that happened below, as there having been a major plot twist by the plaintiff in the expert reports to now designate the trade dress as being nothing more than a 2D pattern. And so then we affirm that sanction. And we also affirm that the asserted trade dress is functional on summary judgment. What about your state law claim issues? Can we just turn to that? You have only a limited amount of time. I understand, Your Honor. So never before has an intellectual property settlement agreement led to a successful state law tort claim. At all. Ever. Never. In all the cases cited before this court, we pointed it out in every brief, it's never happened before. And the question is, why? And the answer is, because they, as a general matter, don't work. There is the intellectual property privilege, which should apply here. There's no question that the only- Be specific with regard to that one, sir. And let's assume that for purposes of argument, the intellectual property, so-called privilege, applies to the tortious interference claim, count two. Why should it apply to unfair comp on just enrichment? Okay. So unfair competition, the only case that's directly on point is American Broadcasting out of the Northern District of Illinois says it applies. The district court didn't follow it because the district court said, well, I don't see other state court cases that do it. But then the district court entered judgment on a state court claim that had never succeeded before. What's the rationale? I'm asking you, sir, for the rationale and the reason. I'm going to say that the so-called IP defense applies to tortious interference. And we know that's so because there's an element in the interference tortious and that claim that requires them to show that it's unjustified, right? Right. So that's the hook. Right. So there's no unjustified problem with regard to unfair comp or unjust enrichment. Well, there is the word unfair, which is not outside- It's not the same. It is not the same, but Illinois does- Can you give me a rationale as a lawyer, not the grounds, oh, it's never happened before. Give me an intellectual argument as to why we should extend the intellectual defense to the unfair comp and unjust enrichment. Because they're, well, if nothing else, they're coterminous. The alleged unfair competition was the alleged interference. So to allow it to be asserted under one and not the other would deprive the privilege of its force, which doesn't make sense. And Illinois has applied that privilege to the statutory Illinois unfair and deceptive trade practices. It's not- I have another question. Do we know what the elements of proof are required for tortious interference state law claim or unfair competition state law claim? And to what extent are those coterminous? Well, they're coterminous. Unfair competition requires, I believe, behavior that shocks the judicial conscience or commercial morality, and the interference requires that it be unjustified. I'd say unfair competition should be harder rather than easier. I mean, interference can be a form of unfair competition, and it's the only form alleged here, which is the same reason why unjust enrichment. I mean, there are cases that specifically say if the basis is the other cause of action, the privilege applies. And so here it would be unusual to say, well, it was- And let's remember what happened here is the absolute privilege certainly covers the defamation, the alleged defamation. I was going to ask you the same question. Why should we extend? Because in this case, the district court judge expressly said, well, I understand there's a doctrine here that if you're sort of repackaging, you have a defamation claim, and then you have an unfair comp or something else, and you're repackaging. But he said that's not true here. He said this is not repackaging. What she said was there's this extra thing. So there's two parts. We believe it infringes, and then there's the stopping of make, use, and sell, what's called the restraint on trade. The trick there is here the restraint on trade is unquestionably legal. I mean, Coca-Cola does an exclusive dealership with McDonald's. RC Cole and E-Hi interferes with their business to sell to McDonald's. But they can do it because it's a reasonable restraint on trade. And in the absence of market power, this is a reasonable restraint on trade. As the ITC found, it's reasonable. So there is no cause of action outside of the defamation claim because the only other thing is a restraint on trade, which is legal. The FTC comes out and says these things are generally legal. So what you're looking for is a new trial with proper jury instructions on these three state law claims? No. For example, absolute litigation privilege is a legal question. We're looking for a judgment. I understand that on the absolute litigation privilege. But what's the hook on the IP issue? I thought you were arguing there was a faulty jury instruction. There was a faulty jury instruction. The jury was never told that intellectual property is... Did you ask for a new trial on that basis? I believe we did ask for a new trial. Sure, I can tell you you did. We did not. Yeah, we did ask for a new trial. I think with respect to the intellectual... I don't understand what you're appealing. I don't understand what your hook is for getting at the IP privilege. For the interference claims, it's the incorrect jury instruction and the lack of substantial evidence that there was anything but an IP motive. Well, that's assuming that you gave the correct instruction, right? The substantial evidence applies whether... And for you to get all the way home on the intellectual privilege is you have to say they gave the wrong instruction. If they'd given the right instruction, there's no evidence. Correct. But you never tell us what the right instruction is. It's in the record what we asked for, that intellectual property is an acceptable motive. But you asked for a broad charge that covered everything. It didn't have any specific reference to intellectual property at all. It does. It does. It does. Yes, Your Honor. I have the jury instruction they asked for that was rejected. The overall, the so-called... Here's what it says. Toyo had a direct... You didn't give it to us in the appendix. I had to go find it. It would have been helpful. You know, you got five volumes of stuff, most of which I didn't need. But some of the stuff we did need wasn't in there. Toyo had a direct intention to injure Arturo's reputation. It was independent of and unrelated to Toyo's desire to protect trade dress. So they actually did have a specific instruction. But I think actually the language that you object to was what you proposed. Correct? I think actually the judge proposed it. The so-called abuse... No, you proposed it. I guess I know your record better than you do. You proposed it, but then you also proposed adding an abuse of privilege instruction separate and apart from the other thing that you proposed. Right. And even on appeal we're saying there was an error in the jury instruction. What we're trying to get at here is that you initially proposed the language that you now contend is wrong. Well, we added... No, in a specific instruction that you asked for count two, right? You contended it was wrong because the district court didn't adopt your additional instruction, which further delineated, I think. Correct. Correct. Okay. But again, there is no substantial evidence. You're out of time. Thank you, Your Honor. Ms. Maynard. May it please the court, Deanne Maynard arguing on behalf of Atturo and SFIS I. I'd like to reserve three minutes for a rebuttal on our cross appeal. So I'm happy to address whatever you would like me to about Toyo's appeal, and then I would like to address our punitive damages cross appeal. So I can pick up with the IP litigation issue if you would like, Your Honor. Why don't you start with the IP privilege, but then I do want you to go back to the trade dress infringement. So go ahead. Start with the IP privilege. Okay. Thank you. So I want to say what's clear. Assume we thought that the IP defense privilege did apply the tortious interference to count two. So what reason would we not extend it to the unfair comp and the unjust enrichment counts? So because no state court has done that. No state in Illinois has done that. That's not a bar. And right. And the elements are different. But I think the more important... What element in particular? I'm trying to get very precise if I can, as to why we wouldn't find it applicable to unjust enrichment and to the other claim. And just for purposes of clarification, Ms. Maynard, is our job to find what we think or to predict what we think Illinois would do? I think what the federal courts do in this instance, Your Honor, is try to predict what Illinois would do. Although we cite a case where Illinois considered two similar claims to here and applied it to only the intentional interference and didn't apply it to the other kind of similar counts that are here. The elements, Your Honor, are in the jury instructions that were given. Okay. Which I am not... Oh, here we go. They're in... For unfair competition, for example, one of the elements is shock judicial sensibilities. Do you agree with that? I'm reading it from it. So you got to agree. You can't disagree. Yes, Your Honor. Okay. So what was your evidence that Toyo Tire behaved in a way that shocked judicial sensibilities? So the situation here is this Toyo is one of the largest tire manufacturers in the world. Atturo is a startup competitor. Atturo brings... Toyo brings an ITC complaint that is not about the supposed trade dress that is at issue here. That is about design patents that they haven't asserted against Atturo. Atturo is not a party in the ITC. None of that's your argument, right? What about that shocks the judicial sensibilities? That's just somebody brought a lawsuit that you don't think was warranted against a small company. It wasn't against us, Your Honor. Okay, but... That's the point. The point is that... And I think they say, you know, we haven't pointed to another case. They haven't... I'm waiting for my judicial sensibilities to be shocked. Okay. Thank you. So they named Atturo and they blocked 10 people in the industry from ever dealing with this small company again, despite the fact this company was not involved in the ITC action, not named in the ITC action. No trade dress was asserted in the ITC action. The evidence at trial, Chief Judge Moore showed that... And Toyo's CEO admitted that they had never... He refused to say he had... That Toyo had a belief in this supposed trade dress before they added these third parties to this... To the... Before they added Atturo to the settlements. Atturo's CEO... Still not... Where's the shocking part? What is... What's the shock to conscience part? What did they do exactly? You're saying a lot of words, but what I'm not seeing is some really extraordinarily bad thing. So it's a course of conduct, Your Honor. And so if I could just get out like the three or four facts that I think do show these counts. Go for it. Okay. So they dragged Atturo, a small startup competitor, into these settlements with third parties. Their ITC expert testified at trial that he had never seen that done before. This kind of settlement where they settle in the ITC and two parties agree to not deal with a third party competitor. That's at document 736, page 125. Their ITC expert. Atturo's CEO, the testimony showed he called Toyo's council and said, please don't add us to these settlements. It's interfering with our business. That the stipulations in the record that that was communicated to Toyo... We have so much to cover. And you said, can I get out my three or four points? I thought it would be three or four sentences, not three or four pages. Well, so this is a question that to which the jury's verdict... Let's move on then. Let's move on. Is it basically bad faith assertion of a bogus IP right? Yes, Your Honor. And so to your questions, Judge Klevin, it doesn't really matter the jury, whether you extend them to the other things or not, because the jury found on this record that they had no good faith basis in their IP. The jury wasn't charged with the fact that protecting your intellectual property, if that is in fact your motive, is a privilege. The jury, they got the instruction they asked for on that point, Your Honor? No, they didn't. They asked for an abuse of privilege instruction and they asked for it to be given with regard to all seven of Atturo's claims and it was not given with regard to any of them. So, but to step back, they have not made an appeal a jury instruction appeal. As you, it's that jury instruction is not in their opening brief. They cite no jury instruction cases. They have not claimed jury instruction error or shown prejudice from it. You had to go find the jury instruction yourself, Your Honor. That's not a jury instruction appeal. They argued the instruction as given was wrong because it didn't include the IP privilege. They argued that clearly in the brief. What am I missing? The way to appeal a jury instruction issue is to identify for this court where, under the federal rules, you requested the precise instruction you requested and then that where it was denied and explain, citing jury instruction on case law, why that instruction should have been given. We were given no notice that that was their argument, Your Honor. They didn't. But you weren't, you don't, weren't on notice that their argument on appeal was that the jury wasn't instructed as to the IP privilege? They didn't make. Yes or no? No. No. They didn't. How about page 66 of the blue brief? 66 to 67. One paragraph. But this is not the way to make an advance argument. This was insufficient to raise a charge. Yes, Your Honor. Basically, what happened was there was a motion for a new trial based on the faulty instruction on this very issue, right? You're aware of that? Yes, Your Honor. And then the new trial motion was denied. And there's not a specific appeal here to the denial of the new trial motion. We're explaining. But there's a request for a new trial and the alternative. And are you, in a sense, saying this doesn't preserve the argument? Yes, Your Honor, I am. So, but because it's not how you present and develop an argument. To the abuse of privilege instruction, Chief Judge Moore, that you're referring to, that they asked for, it's like a page long. It's not the simple thing. To the extent the opening brief on page 66, Judge Clevenger suggests a jury instruction appeal, it suggests that they asked for a simple instruction like it's not unjustified if they were doing it in a good faith basis for their IP. They asked for no such instruction. Instead, what they asked for is, as I think Judge Clevenger mentioned, they asked for the judge to disreport, to give exactly the instruction they did. They asked, and the judge gave it over our objection, place the burden on Atturo that Toyo acted in an unjustified way, meaning for the sole or primary purpose of interfering with Atturo's business expectancy. That's the, their request for that is in volume four on A21082. And the judge gave that instruction on volume one, A179 to 81. And that instruction allowed the jury- Why don't we move on to the trade dress infringement? There's limited time. Why don't you focus on why it is in clear error to have concluded that the answer to the interrogatory, which pointed to the highlighted portions of the tire, was conveying the two-dimensional tread, trade dress claims. Because it's not just the blue highlighting and nothing in the text that accompanies it that suggests it's two-dimensional. To the contrary. The text that's accompanying it clearly shows it's three-dimensional. So, or clearly makes clear. They talk, they claim the- Where does it clearly show it's three-dimensional? Did you overstate that, maybe? On volume two in A9246. I've got it right in front of me. So they say the overall visual appearance of the OPMT tire tread design. And that definition was clearly three-dimensional, both because it said, the written description features the three-dimensional center and shoulder blocks and it includes a three-dimensional- Wait, where's the words three-dimensional? I'm confused. So it doesn't say three-dimensional, Your Honor. It says center and shoulder blocks, which are three-dimensional. It includes images of three-dimensional tires. To be clear, the center and shoulder blocks, it's focusing on the tread design. The tread design, I mean, isn't that two-dimensional? Not the way it's described here, Your Honor. It's three-dimensional. They have three-dimensional pictures, the highlighting and image- understood and told everyone he was going to focus on his understanding that the trade dress was directed to the two-dimensional stuff. I don't think he did that, Your Honor. Like the same place that they point to, I think that's their mischaracterizing testimony. He points to the paragraph. He points to the whole supplemental interrogatory, the same portions that I- He doesn't say from here on out, I'm going to treat the trade dress as the two-dimensional stuff? No, he doesn't, Your Honor. He says, do you understand, in that place that they cite, he says it's the preceding paragraph and the text as well as the images, and do you understand that from now on when I talk about that, I'm going to talk about like your entire supplemental response. And their 30B6 witness did, as Judge Klevner says, point out that the trade dress includes three-dimensional features like grooves, sipes, and stone ejectors at the same place in her deposition to which counsel pointed in the same very passages, agreed that it was three-dimensional. We always understood this trade dress to be three-dimensional, and the district court, which, so just to take a step back, two district court judges and a magistrate judge dealt with this case for years, and Toya was repeatedly sanctioned, and the district court- Okay, your lawyer said, when I quote at page 9288, when I refer to the alleged trade dress, I will be referring  of images A through E on page 5 and the description in the preceding paragraph. Yes, Your Honor, and the description in the preceding paragraph. I don't see anything in the preceding paragraph that incorporates the three-dimensional features. The preceding paragraph is the words, overall visual appearance of the tire and tread design. Not tire and tread design, inaccurate, the tire tread design. Of the tire tread design. I'm sorry, did I not say that? No, you said tire and tread design. Oh, I'm sorry, I didn't mean to. Two different things. I apologize. Of course, the tire is three-dimensional. No, no, I apologize, I misspoke. So the three-dimensional center and shoulder, it doesn't say the word three-dimensional. It says center and shoulder blocks. But again, this court defers to the district court who oversaw this case for years and said it would have been really simple for you to have said a long time ago that you were just claiming the two-dimensional. Sure, I don't think even they would disagree that there was a better way they could have done this than the way they did. That's a different question from was it clear error to conclude this wasn't enough? Well, so no, it wasn't clear error, Your Honor, because when you put these descriptions together, which even if you think there's some ambiguity there, the blue highlighting wasn't added just for these interrogatories, just for context. Those are just pictures from their website where the blue highlighting is on. The same like ads that are in the advertising where they sort of feature the functional features of these designs. So it's not like that would have told us anything special about these interrogatory answers because those are just like stock photos that they have. But the language, we proceeded under the assumption and understanding that this was 3D. The district court also understood it was a 3D design. What about the other side's attempt to incorporate by reference the CD-Cal litigation? So the magistrate- We put a trade dress over there. The magistrate judge told them early on that what they were doing and litigating in California was irrelevant, and they were going to be bound by what they said in this case. That's at A-17-561-2. And in the sanctions order, the district court concluded that California trade dress has little bearing here. We never conceded that we understood the trade dresses to be the same. What we understood was there was an A trade dress being asserted on the same tire in both actions. But we never asserted they were the same. You really wanted to address your punitive damages, and so I want to let you do that. Thank you, Your Honor. Can I give you 10 seconds more on the IP litigation privilege? I mean, yeah, but I don't think your version of 10 seconds and my version of 10 seconds are the same. The district court, the jury heard both of the theories. Their argument that it was good faith. Our argument that it wasn't based on that and rejected their story. The jury understood what the issue was and reached its findings. On the punitive damages, the district court reduced their award by 99.9 percent, from $100 million to $100,000. And the damage award that the jury awarded satisfies due process and should not have been reduced. You're talking about how the larger award given by the jury was within the constitutional limit, but you never tell me what the constitutional limit is. Well, I think that all you have to decide is that the jury's award to which courts defer is within the limit. I don't think you have to decide what the maximum is. How do I know if it's something within the limit unless I know what the limit is? Well, there's no formulaic answer to what the limit is in any particular case, Your Honor. So each case is decided on its own. I really can't say it's within the limit because we don't know what the limit is. Well, so you can, you figure out the limit by looking at the factors that the Supreme Court has given guidance on. And so here there were three reprehensibility factors that the jury found, which is financial vulnerability of this company vis-a-vis Toyo, the repeated... Hold on a sec. You started out the argument talking, and I'm going to paraphrase a little bit from your brief because you didn't say all this at argument, but you painted a picture of a guy working in a spare bedroom and how awful and weird it was for him to be sort of harmed through the ITC proceedings because he was a tiny, he's a small startup company. So isn't Arturo's potential harm one of the guideposts that the State Farm case says you're supposed to look at when assessing what the constitutional maximum is? And it seems like he probably wasn't harmed $100 million worth, given what you've described. So it's not, you're not supposed to... The $100 million isn't the harm to the plaintiff. It's one of the factors you take into account when assessing the ratio. The constitutional maximum is the ratio. Right, when assessing the ratio. So that's all that's clarified. So our point is that when this happened, it was a very small startup and the testimony showed that there was $10 million in lost profits, and that's the compensatory damages. And our point is that Arturo was able to get going in the next several years, despite these actions, and had about $10 million in business that it wouldn't have had if Toyo had actually succeeded and gotten all the people to whom it tried to get to put Arturo's tire in the agreements. And then it would have been $20 million. That's the potential harm that we were talking about. And so then when you add that together, it's 20. So then when you do the ratio, it's a one to five ratio, not a one to 10 ratio when you think about it. But Judge Clevenger, to decide what's the maximum in any given case, you apply the standards that the Supreme Court has done. And here, so like in Roone Pollock, this court did that and that was a $15 million damages award. Again, a business tort there. And $200 million would have been outside the constitutional limit. In that case, Your Honor? In this case. Oh, in this case? I haven't thought about it that way, Your Honor. I'm not sure because the question is, the jury didn't find that. So we're not sort of presented with that question. But here, like in Roone Pollock, this court upheld a $50 million punitive damages. It didn't sign that was the maximum. It just decided that was enough. I don't think you have to sign that. No, thank you, Your Honor. I appreciate your indulgence. All right, I'll add to make up the time, even two minutes to, oh, so does he have no rebuttal time? I'll give him three minutes for rebuttal time. That's fine. Thank you, Your Honor. I think I can make this brief. I just wanted to start with a couple things Judge Chen had asked about it being a bogus IP right. It wasn't tried on the basis of being a bogus IP right. The jury wasn't permitted to even see the tires. At Turow's insistence, we wanted to show the tires and say, look at how close these are. And they wouldn't allow it. For a similar reason, there was an ITC filing that Toyo had made explaining, you know, this is being advertised as a knockoff tire. We weren't able to show that to the jury either. So the bogus IP issue wasn't actually at play. Do you think if we were to send this back for a new trial of these three state law claims, that the jury would necessarily need to see what your asserted trade dress right is to figure out? In order to find it, to decide that it's bogus? Yes. Whether there's a good faith assertion. Correct. IP right. That's correct. And what we have here in the evidence, the only evidence, we didn't have the actual claim, right? And at Attorney's Assistance, we couldn't show actual confusion. We couldn't. All these things we had, we weren't allowed to show. But what we did show is that it was the outside attorneys who identified it, put it in the settlement agreement. It's a little confusing on how to look at this if we were to affirm the trade dress outcome. Well, and honestly, that is part of the problem. Because now we would be left with a situation where there's no actual articulable trade dress right. Or at least not one that hadn't been lost, which is part of why this got so gnarled and why the dispositive sanction, because we didn't say that the thin little blue line is two-dimensional, right? That resulted in the loss. It's not that we had a bad claim. It was a procedural ground that we weren't allowed to rely on our experts or even fix it because they didn't say when they saw the expert reports, well, this is new. They proceeded. You did have a bad claim. Your complaint from day one was ambiguous, which is unfortunately what we tend to see in these trade dress cases because you want to keep your options open as things proceed. You don't identify with specificity. And you frustrated, not you personally, but your side frustrated one magistrate judge and two different district court judges into sanctioning you because of a pattern of hide the ball. That's what happened. If this had been what you filed in the first instance, maybe you wouldn't be where you are today. This being the blue highlighting? If what you filed ultimately after many attempts to get you to identify with specificity, your trade dress is what you filed today, maybe you wouldn't end up where you are with the sanction you are. But the hide the ball game, it doesn't- But Your Honor- Courts like you very much or sympathetic when you then make mistakes. I understand that, Your Honor. But just be clear, the blue highlighting was 2014. It was very early. And in terms of- All the stuff you said before, it may include this or your complaint. It's the overall look of the title. That all went away. That includes everything. That went away in 2014, Your Honor. But that's where you started. And it took forever to get you to add specificity. No, the complaint was filed in 2014 and the updated interrogatory answer was in December of 2014 before discovery really began. It was, that part was, if you don't like the interrogatory answer with the blue highlighting- My question was really more about what a state law claim trial would look like. Oh, and that's- If when, you know, there's no defined trade dress in the case at that point. Right. They would have to prove, and they never even tried, that it was a sham. In fact, there was almost a concession. It's not for Norr Pendington doctrine, a sham litigation. So it's already almost, it's already there. It's not really triable as a bogus IP right. And there's nothing left. There's an absolute privilege statement and a settlement agreement and a perfectly legal restraint on trade. Which, by the way, Toyo didn't say nobody can do business with Atturo. It was one Atturo tire. They had others and it was the one that was copied from Toyo's. I also wanted to just point out one last thing, and I'll be really quick. On page 17 of the reply is where we have Mr. Bianco for Atturo saying, Toyo is representing, in this case, that the issues are very similar, if not the same, with respect to the same trade dress in California. And the court ruled on that by saying you can see what that same trade dress is in California by looking at this document where the judge describes it as the blue highlighting shows a two-dimensional surface. So they did actually say to the court it is the same trade dress. Okay, Ms. Maynard argued that you forfeited whether or not the intellectual property privilege extends to the three claims that are here. Certainly, you never referenced. I had to go find, Judge Glumter didn't even know about, because you didn't reference it. I had to go find the jury instruction that wasn't given. Is that what your case is all about? The jury instruction that wasn't given? Because the jury instruction that was given is the one you asked for. You did ask for an additional instruction to be given on abuse of privilege. You don't mention that anywhere in your briefs. You didn't include it in the appendices. We didn't include the instruction. We do mention it in the brief. We say that it was an error. Where did you mention the so-called abuse of privilege instruction? Page 66. Well, it's what I think. 66? It's the 66 to 67 where we say. Where is there any reference to the abuse of privilege instruction in those two sentences? At the top of 67, the district court refused to instruct the jury that the intellectual property rights constitutes justification. And then there's a cite to the record where that happened. Well, I mean, you had actually asked for an instruction that didn't deal with the very topic. Right. And the district court refused to give it. The one you proposed for count two that he gave. She. Yes, Your Honor. That was your proposal. And then. And we asked for more. I think what the chief judge was asking you, we're talking about a forfeiture argument here. So you're I believe you're arguing that that you preserve the whole challenge to the jury verdict by the two sentences, 66 to 67. Yeah. Can you point any place else in your blue brief where you raise the topic of an insufficient jury instruction on intellectual property? That is the place. This is it. And to be clear. And she said, well, I'm shocked. I didn't reply in my red brief to this whole topic because I didn't understand you're making that argument. Now, what do you say to her view that she's being blindsided at the oral argument by this whole argument? Well, it's it's it's pretty clearly both in our blue brief and our yellow brief and our yellow brief. We address the fact that we didn't waive it, citing I'm sure the blue brief is 66 to 67. But to be clear, there is no substantial evidence. We're in the yellow brief. Are you doing all this? Paige? Hey, are you a member of the bar? Yes, she is. Stand up. John Custer on behalf of TOI. Yep, he's going to argue now. You sit down. I've been trying to get young people in front of us. I'm just going to manhandle it. To have us in the yellow brief. You're going to answer these questions. You know the record better. Tell us where it is.  At first, your honor, I would like to point to pages 40 and 41 of the blue brief. Page which? 40 and 41 of the blue brief. In our summary of the argument. Blue brief, your honor. 40 and 41. That's those three sentences, right? Yes, your honor. I just want to point out that that is an additional part. So those are the two references in the blue brief to the alleged quality jury instruction issue. Yes, you're on page 67. The other reference. Do you happen to know? I'm going to see just how good your knowledge of the record is. What is appendix 184 to 185? No, you can't look it up. I want to see if you know what it is. Yes, 184 to 185 is the order from the district court denying our request for the additional privilege. He's expressly discussing and denying your abuse of privilege. Yes, that's right. And that's what you say at the top. Okay, you want to turn us to the yellow brief now? We're in the yellow brief. Yes, your honor. Give me one moment, your honor. Thank you. I guess this minute order at 184, 185 doesn't give a reason why the court is refusing to give Toyo's proposed abusive privilege instruction, right? Just says they're not going to do it. Yes, your honor. And I believe page 49 of our yellow brief. 49 of the reward brief? Yes, yes, your honor. Where? In that middle paragraph, we also discussed how the original privilege instruction by itself is not enough. In the middle paragraph? The middle paragraph on page 49. On 49? 49, your honor, yes.   How does that challenge the jury's recommendation? Well, the jury's recommendation is that the district court It's explaining how without the additional privilege instruction. So you believe this is a clear statement of an argument that you were entitled to a new trial because of your instruction? I believe the clear statement is the portions in the blue brief, your honor. But I think this continues that argument, as well as page 50, the end of the last paragraph of page 50 of the yellow brief. I think that's your strongest case. And specifically ask the jury to be told that seeking to protect intellectual property does not constitute inference or interference. The district court refused. And that is a cite to the minute order, as well as the hearing transcript where the district court refused, correct? Yes, that should be the hearing transcript, yes. All right. What was your name again? John Custer, your honor. You did a really nice job. Thank you very much. Your time's up, though. Ms. Maynard, nobody addressed your cross appeal. Do you agree nobody addressed your cross appeal? I do agree, your honor. So no more time. Thank all counsel. This was very helpful. It was a difficult, complicated case. And you all came very well prepared. Thank you very much for your arguments today.